UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. |
| ) | 5:21-CR-00115-GFVT-MAS |
| ERIC MCCAWLEY, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This case is before the Court on Defendant Eric McCawley's Motion to Suppress. [DE 15]. The district judge referred this matter to the undersigned for a Report and Recommendation. The United States responded to the Motion [DE 21].[1] The Court has determined that a hearing is not necessary because the issue can and should be decided on the four corners of the search warrant affidavit. For the reasons stated herein, the Court recommends the District Court deny McCawley's Motion to Suppress.

**I.  FACTUAL BACKGROUND**

On July 28, 2021, Detective K. Shortridge, a detective for the Lexington Police Department, sought and received a state search warrant both for a residence located at 2517 Lindenhurst Loop in Lexington, Kentucky as well as the person of McCawley. Detective

---

[1] The United States responded to the motion on February 8, 2022 [DE 18] and then filed for leave to file an amended response on February 11, 2022 [DE 21], which was the deadline to the motion. McCawley was served with the amended response on that date via the Court's electronic filing system. Thus, although the Court did not rule on the United States' motion for leave to amend until February 17, 2022 (which was not docketed until February 19, 2022), the Court considers McCawley's deadline to file a reply to have been February 25, 2022. If McCawley disagrees, he may raise the issue with Judge Van Tatenhove in an objection to this Report and Recommendation.

Shortridge stated in the affidavit that he received information from a "qualified confidential informant" ("QCI") that McCawley was trafficking illegal narcotics from a residence on Lindenhurst Loop. [DE 23-1, Page ID # 94]. Detective Shortridge added that the QCI had provided "accurate, reliable, and credible information on multiple occasions." [DE 23-1, Page ID # 94].

The affidavit stated that Detective Shortridge and DEA Special Agent Trueblood met with the QCI twice to make controlled purchases of narcotics from McCawley at the residence at Lindenhurst Loop. On both occasions, Detective Shortridge outlined how he searched the QCI's vehicle and person prior to the controlled transaction to ensure the QCI did not possess contraband. [DE 21-3 at Page ID # 95]. Both controlled buys occurred at 2517 Lindenhurst Loop in the week preceding execution of the search warrant.

## II.    ANALYSIS

### A.    THE EVIDENCE WAS SUFFICIENT TO SUPPORT A FINDING OF PROBABLE CAUSE.

"Probable cause supports a search warrant when the affidavit demonstrates 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Powell*, 847 F.3d 760, 769 (6th Cir. 2017) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The "review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four-corners of the affidavit . . . ." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citations omitted). *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). "Nevertheless, when considering that information, we look to the totality of the circumstances." *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009).

#### 1.    The QCI was Reliable.

McCawley challenges probable cause in the affidavit, arguing "the affidavit in support of the search warrant is devoid of sufficient informant reliability/credibility and lacks the requisite

substantial police corroboration necessary to support the determination of probable cause." [DE 15-1 at Page ID # 53]. The Court disagrees with this assessment, legally and factually.

Legally, Detective Shortridge described the QCI as an individual who had "provided law enforcement accurate, reliable, and credible information on multiple occasions." [DE 21-3 at Page ID # 94]. "Sixth Circuit precedent clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable." *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001). McCawley relies on *Illinois v. Gates* for the proposition that "[a]n officer's statement that affiants have received reliable information from a credible person and believe that heroin is stored in a home, is likewise inadequate" to find probable cause sufficient to issue a search warrant. 462 U.S. 213, 239 (1983) (citation and quotation marks omitted).

The circumstance described in *Gates* is easily distinguished from the instant case. Here, the affiant described a qualified confidential informant—not just a "credible person"—who has repeatedly provided reliable information to law enforcement. The facts of this case are far more like those in *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000) than in *Gates*. In *Williams*, the affiant stated he had received information from a confidential informant who had provided reliable information in the past that narcotics would be found at a particular residence. *Williams*, 224 F.3d at 531. The affiant had conducted surveillance on the residence and observed certain individuals coming and going from the residence, engaging in what he believed to be drug trafficking activity. *Id*. The confidential informant went into the residence and confirmed there were narcotics present inside. *Id*. The Sixth Circuit held that even though the informant in *Williams* was not named, "the additional information about the police surveillance and the heavy traffic around the residence corroborates the informer's information sufficiently to find probable

3

cause." *Id*. at 533. The Sixth Circuit has repeatedly reaffirmed this concept, holding that "an affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information." *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004); *See also United States v. Jackson*, 470 F.3d 299, 307 (6th Cir. 2006) (quoting *Woosley*).

Factually, the QCI's statements are bolstered by the police surveillance of Lindenhurst Loop during the controlled narcotics transactions. Detective Shortridge and DEA Special Agent Trueblood twice searched the QCI and his vehicle, provided the QCI with buy money, followed the QCI to 2517 Lindenhurst Loop, maintained "continued surveillance" on him, and then immediately retrieved narcotics from the QCI that the QCI said he just purchased at the residence. Detective Shortridge stated that "[d]uring the continued surveillance, it did not appear the QCI had any contact with any other subject(s), or location(s) other than those at 2517 Lindenhurst Loop." [DE 21-3 at Page ID #95]. These personal observations by Detective Shortridge and SA Trueblood sufficiently corroborate the QCI's statements that he knew Eric McCawley to sell narcotics at 2517 Lindenhurst Loop, and that he purchased the narcotics at that residence while under continuous law enforcement surveillance.

Pursuant to the standards set forth in *Greene*, *Gates*, *Williams*, and *Woosley*, and considering the circumstances in their totality, the Court, finds there was sufficient information about the QCI's reliability and corroborating information to support the finding of probable cause.

> **2.   Police Corroboration Through "Continued Surveillance" Did Not Require Wired Monitoring.**

McCawley argues that the controlled buys do not constitute substantial police corroboration because

> [i]n neither of the controlled buys described in the affidavit was the informant ever equipped with audio and/or visual recording devices nor was there any recorded

4

telephone conversations with the target of their investigation. As a result, law enforcement was not able to independently or substantially corroborate, with personal knowledge, anything that the informant said to them. In addition, on both occasions, the affidavit makes clear that "it did not appear" that the informant had any contact with any other subject or location. However, it doesn't say anything about how many people, if any at all, other than Defendant were inside the residence at the time these purchases were made. Continued police surveillance confirming whether additional parties were in the residence would have dispelled any question as to whether the informant could have dealt with someone other than Defendant, but no continued surveillance occurred here.

[DE 15-1 at Page ID # 52].

As an initial matter, it is unclear on the face of the affidavit whether the informant was equipped with audio or visual recording devices during the controlled buys. McCawley assumes, because the affidavit does not specifically state that the QCI was monitored with such equipment, that the QCI was not. The United States reads the opposite inference into the affidavit, claiming that "'continued surveillance' [] implies that there was wired monitoring of the deals between the informant and McCawley." [DE 21-2 at Page ID # 88]. The Court cannot draw, from the four corners of the affidavit, any conclusion as to the use of a recording device. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) ("Review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit.").

The Sixth Circuit, however, similarly addressed and rejected McCawley's argument in *United States v. Smith*, 337 Fed. App'x 500 (6th Cir. 2009). There, a confidential informant made two controlled purchases at two locations in the week before the search warrant was executed. *Id.* at 502. "[T]he vehicles used for the controlled purchases and the confidential informant were searched prior to the purchases . . .; the confidential informant was kept under constant visual surveillance during the entire time he was going to and from the properties, the confidential informant then returned to [the affiant] where he turned over the drugs[.]" *Id.* Smith challenged the informant's reliability and argued that "because the informant could not be observed at all

5

times, specifically inside the residence while actually making the purchase, that because he should have worn a wire, and that because he should have been subjected to a cavity search, probable cause cannot exist." *Id*. at 504. Just as in this case, the Court found that the affidavit's statement that the information "was kept under constant visual surveillance" was "vague as to whether there was surveillance during the actual purchase" and therefore did not consider that testimony. *Id*. The Sixth Circuit held that, when reviewing the four corners of the affidavit, "the proper measures were taken in this case to ensure the reliability of the controlled purchases, including thoroughly searching the informant and the vehicle used before the purchase and maintaining a visual on the confidential informant going to and coming from the residence." *Id*. The Court found that the totality of these circumstances supported a finding of probable cause and affirmed the district court's denial of Smith's motion to suppress. *Id*. at 505.

The Court follows the Sixth Circuit's guidance in *Smith* and rejects McCawley's argument.

### 3. **Omissions in the Affidavit Do Not Undermine its Probable Cause**

McCawley finds additional fault with several facts he suggests should have been in the affidavit for the judge to have found probable cause.[2] All of these arguments fail.

First, McCawley argues there was no information connecting him to Lindenhurst Loop or drug trafficking. However, the QCI "advised [Detective Shortridge] of a subject known as 'Eric McCawley' who was trafficking illegal narcotics from a residence on Lindenhurst Loop." [DE 21-3 at Page ID # 94]. Having already found the QCI to be reliable and corroborated, the Court

---

[2] McCawley notes his arrest dated on the face of the search warrant is listed as one day prior to the day the warrant was signed and executed. [DE 21-3 at Page ID # 96]. The Court agrees with the United States that this appears to be administrative information that was put on the warrant after the judge signed it. Regardless, even if it was not, the record reflects McCawley was arrested on the day the warrant was signed, and this date is nothing more than a clerical error that had no bearing on the probable cause determination.

6

finds that this statement was sufficient to connect Eric McCawley to the residence and to drug trafficking.

McCawley also complains that the search warrant never explains what specific narcotics were purchased from 2517 Lindenhurst Loop, or if they were field tested and proven to be illegal substances. Once again, the totality of the circumstances in the affidavit leads to the conclusion that Detective Shortridge, a nine-year veteran of the Lexington Police Department (as stated in the affidavit), and a DEA Special Agent can recognize illegal narcotics. The warrant requirement does not mandate that contraband will certainly be found in the place to be searched, only that there is a "fair probability that the drugs will be found in a particular place." *United States v. Church*, 823 F. 3d 351, 355 (6th Cir. 2016). The Court is not aware of any requirement—and McCawley cites to none—that suspected narcotics be described by look or smell, or field-tested to satisfy the probable cause requirement.

Finally, because the affidavit does not specify whether there was audio or visual monitoring of the controlled purchase, McCawley argues other individuals (or no one at all) could have been inside the residence with the QCI. This is true; however, this possibility does not eliminate the probable cause that evidence of narcotics trafficking would be found at 2517 Lindenhurst Loop. "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

Ultimately, "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added. It is the totality of the circumstances that persuade us that the affidavit in the instant case was, in fact, not merely conclusory and bare

7

bones in nature but sufficient." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000). This search warrant was far from loquacious; however, it was not bare bones, either. The totality of these circumstances represents a fair probability that narcotics would be found at 2517 Lindenhurst Loop and on McCawley's person. For these reasons, the Court finds the Affidavit in support of the search warrant provided sufficient evidence to support probable cause to search for narcotics.

  **4. <u>There was no Probable Cause to Search for Firearms</u>**

The Court agrees with McCawley on one point: the search warrant affidavit did not set forth probable cause to search for firearms. Firearms are not mentioned either in a cursory statement or boilerplate language. The affidavit is completely devoid of any mention of firearms, but the search warrant authorizes a search for them and their seizure. Even so, the law does not require suppression of that evidence. If the Court excises the authorization to search for and seize firearms from the warrant, the officers could have seized the firearms upon discovery of them nevertheless.

And once more, the Sixth Circuit has rejected McCawley's very argument. Where officers seized weapons during the execution of a search warrant directed at narcotics, lacking any mention of firearms, the Sixth Circuit held that "firearms may be seized pursuant to a search warrant directed at narcotics. Firearms are evidence of drug trafficking." *United States v. Davis*, 900 F.2d 260 (Table), 1990 WL 51399, at *1 (April 23, 1990) (citing *United States v. Marino*, 658 F.2d 1120, 1123 (6th Cir.1981)). Thus, while the search warrant was deficient on this point, the firearms could be legally seized during the search for narcotics.

**B. THE *LEON* GOOD FAITH EXCEPTION APPLIES IN ANY EVENT.**

If, for any reason, a reviewing court finds that the search warrant was legally deficient, the Court finds that the *Leon* good faith exception to the warrant requirement applies. The *Leon* good faith exception permits the admission of evidence "seized in reasonable, good-faith reliance on a

8

search warrant that is subsequently held to be defective." *United States v. Leon*, 468 U.S. 897, 905 (1984). "[C]ourts will not exclude evidence when the costs of suppression outweigh the benefits of deterrence, such as when reasonable officers rely on a magistrate's warrant in good faith. . . . That exception comes with an exception of its own. An officer 'cannot reasonably presume' that a 'facially deficient' warrant is valid." *United States v. Harney*, 934 F.3d. 502, 505 (6th Cir. 2019) (citing *United States v. Leon*, 468 U.S. 897, 919-21 (1984)). The "exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916.

Here, the Court has found there was no police or judicial misconduct in the issuance of the search warrant.

> If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.
>
> In short, where the officer's conduct is objectively reasonable, excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that ... the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.
>
> This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. In most such cases, there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.

*United States v. Leon*, 468 U.S. 897, 919–21 (1984). The officers involved reasonably believed they had authorization from a neutral judicial officer, pursuant to a multiple-page search warrant detailing their investigation, the statements of an confidential informant, and their observations at Lindenhurst Loop, to conduct a search of the residence and person. Accordingly, the *Leon*

9

exception to the exclusionary rule applies and the evidence found because of the search, should not be suppressed.

### III. CONCLUSION

For reasons stated herein, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Suppress [DE 15]. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b) (1), Fed. R. Crim. P. 59(b)(2), and local rule, within **SEVEN DAYS** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. The Court finds the shortened objection period is necessary due to the March 21, 2022, trial date.

Entered this 28th day of February, 2022.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge